**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
GUERLINE BENJAMIN

                           Plaintiff,                  **ORDER IMPOSING SANCTIONS**

    v.                                                     2:24-cv-7399 (LGD)

COSTCO WHOLESALE CORPORATION,

                           Defendant.
---------------------------------------------------------------X

**LEE G. DUNST**, Magistrate Judge:

      A client expects that her attorney will vigorously pursue her case and make persuasive arguments on her behalf to the court. And she expects that the lawyer will perform the work in an efficient manner. Likewise, courts expect submissions from attorneys to be accurate. They similarly anticipate counsel will identify the appropriate authority supporting a legal position presented to the court.

      None of that happened here. In this case, Plaintiff's counsel, Victoria Hovsepyan, cited fake cases to the Court in her reply in support of a motion to remand. *See* ECF No. 19 (the "Reply"). It later became apparent that counsel generated these case citations through the use of an artificial intelligence ("AI") platform called ChatOn. *See* ECF No. 25 (the "Order to Show Cause"); ECF No. 31 (the "Response") ¶ 3. The arrival of AI platforms that can generate purported "legal" arguments and supply alleged "case law" poses legal and ethical issues for both attorneys and courts. *See* Jeff Neal, *The Legal Profession in 2024: AI*, Harv. L. Today (Feb. 14, 2024), https://hls.harvard.edu/today/harvard-law-expert-explains-how-ai-may-transform-the-legal-profession-in-2024/. Although AI tools can make legal work more efficient, they also can "hallucinate"—that is, they produce blatantly incorrect information that, on its face,

appears truthful. *Id.* For example, AI tools can produce case citations that conform to the Bluebook, but ultimately are not real. And while these tools can "aid lawyers and their clients," they lack the professional experience and judgment that attorneys are hired to provide. *Id.*

Unfortunately, this case is nothing new. In recent years, courts across the country have continued to receive submissions littered with AI-generated "case" citations. As one court observed, "thus far [generative AI's] batting average in legal briefs leaves something to be desired." *Pegnatori v. Pure Sports Techs. LLC*, No. 23-CV-01424, 2023 WL 6626159, at *5 n.5 (D.S.C. Oct. 11, 2023). This epidemic of citing fake cases has continued unabated, and, by way of example, the undersigned has identified at least four reported cases in the recent *weeks* confronting this very same issue. *See Ferris v. Amazon.com Servs., LLC*, No. 24-CV-304, 2025 WL 1122235, at *1 (N.D. Miss. Apr. 16, 2025) ("Parties who cite false cases not only seek to secure unfair advantage, they are, in fact, avatars of a post-truth world."); *Bevins v. Colgate-Palmolive Co.*, No. 25-CV-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025) (counsel "violated Fed. R. Civ. P. 11(b)(2) by submitting briefs to the Court that cited case law that did not support his stated propositions and which, on their face, do not exist"); *Gordon v. Wells Fargo Bank N.A. Inc.*, No. 24-CV-388, 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025) ("While there is no general prohibition on using AI during the course of litigation, Plaintiff has a duty to ensure he is not citing to fake opinions in his filings."); *Dehghani v. Castro*, No. 25-CV-0052, 2025 WL 988009, at *4 (D.N.M. Apr. 2, 2025) (in imposing sanctions, the court noted that counsel had submitted "non-existent cases" that were "likely the handiwork of a ChatGPT or similar artificial intelligence (AI) program's hallucinations").[1]

---

[1] Indeed, in just the last few *days*, a court issued yet another order to show cause in a case in which an attorney apparently used AI to generate fake cases. *See* Order to Show Cause, *Coomer v. Lindell*, No. 22-cv-1129 (D. Colo. Apr. 23, 2025), ECF No. 309 (discussing citation of sham, AI-generated cases in a brief in opposition to a motion *in limine*).

These phony submissions raise serious problems. To start with the obvious, an attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure. As detailed below, these made-up cases create unnecessary work for courts and opposing attorneys alike. And perhaps most critically, they demonstrate a failure to provide competent representation to the client.[2]

With this background in mind, the Court now considers whether sanctions are appropriate in this case. On February 12, 2025, the undersigned ordered Plaintiff's counsel to show cause either by (1) providing copies of the cases cited in the Reply or (2) submitting a sworn attorney declaration explaining how she came to locate the apparently nonexistent cases counsel cited. ECF No. 25. The Court has reviewed Plaintiff's submission (ECF No. 31) and held a hearing on April 16, 2025. *See* ECF No. 34 (minute order). For the foregoing reasons, the Court concludes that sanctions are warranted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

  A.  **The Motion to Remand**

Plaintiff Guerline Benjamin commenced this action in New York state court on February 16, 2024, alleging a negligence cause of action against Defendant Costco Wholesale Corporation. ECF No. 1-1. Pursuant to 28 U.S.C. § 1447, Defendant later removed the case to this federal court. *See* ECF No. 1. Subsequently, Plaintiff's counsel (who is admitted to practice law in the State of New York, but is not admitted to this District) file a motion to appear *pro hac vice*, which the undersigned approved. *See* ECF No. 5; Electronic Order, dated October 30,

---

[2] Unfortunately, it appears the use of AI in court proceedings has seeped into oral advocacy as well. *See* Arthur Chi'en, *AI-generated Lawyer Sparks Courtroom Controversy in New York*, FOX 5 (Apr. 8, 2025), https://www.fox5ny.com/news/ny-ai-generated-lawyer-courtroom (discussing a plaintiff's "attempt to use an AI-generated avatar as his legal representative" and noting it "didn't go over well" in proceedings before a New York state court).

2024.  By letter motion dated November 29, 2024, Plaintiff indicated her intention to move to remand the case to state court.  ECF No. 11.  Accordingly, District Judge Nusrat J. Choudhury (to whom this case was assigned at the time), set a briefing schedule, ordering that Plaintiff serve any motion to remand by December 17, 2024, that any opposition be served by January 2, 2025, and that any reply be served by January 9, 2025.  *See* Electronic Order, dated December 3, 2024.  On December 17, 2024, Plaintiff filed her motion to remand the case to state court.  ECF No. 12.  On January 6, 2025 (four days after the court-ordered deadline), Defendant filed an untimely opposition to the motion to remand.  ECF No. 13.

What followed, in the undersigned's opinion, was a wholly unnecessary letter-writing campaign by the parties.  First, Defendant submitted a letter on January 7, 2025, explaining that a law office error was the cause of its untimely filing and consenting to an extension of time for Plaintiff to file a reply.  ECF No. 15. Two days later, on January 9, 2025, Plaintiff filed a letter requesting that Judge Choudhury "disregard Defendants' untimely opposition and proceed as if no opposition has been filed and hereby grant Plaintiff's Motion to Remand."  ECF No. 16.  Judge Choudhury construed Defendant's submission as an "after-the-fact motion for an extension of time" and Plaintiff's letter as a motion to strike the untimely opposition or, in the alternative, for an extension of time to file a reply.  Electronic Order, dated January 9, 2025.  Judge Choudhury denied both motions without prejudice to renew after the parties had engaged in the required meet and confer process.  *Id.*  However, even after the meet and confer efforts that apparently took place on January 10, 2025, Plaintiff's counsel continued to take an aggressive position opposing Defendant's "after-the-fact" extension request.  ECF No. 18.  Defendant, by contrast, did consent to an extension of time for Plaintiff to file a reply.  *Id.*  On January 15, 2025, Judge Choudhury granted Defendant's "after-the-fact" extension request and

4

ordered Plaintiff to reply by January 17, 2025. Plaintiff never requested an extension of that deadline and filed the Reply at 8:52 PM on January 17, 2025. *See* ECF No. 17.

Only a few days later, on January 22, 2025, the parties appeared before the undersigned for the Initial Conference. The Court approved the parties' proposed schedule (ECF No. 20), and noted that "[t]he parties have indicated that they consent to the undersigned Magistrate Judge for all purposes" and therefore "shall file the appropriate paperwork." ECF No. 21. On January 29, 2025, the parties consented to the jurisdiction of the undersigned, which Judge Choudhury approved on January 30, 2025.

B. **The Order to Show Cause**

Aside from the overzealous letter-writing campaign, the procedural history outlined above would raise few eyebrows. However, things took an unexpected turn when the Court started to review the submissions in connection with the pending motion to remand. As detailed in the Court's Order to Show Cause, in reviewing the Reply (which took the form of a sworn affirmation under penalty of perjury), the Court was unable to locate five of the seven "cases" that Plaintiff cited.[3] The Court identified the following issues:

- *Klein v. E. I. Du Pont de Nemours & Co.*, 406 F.2d 1004, 1006 (2d Cir. 1969), *see* ECF No. 19 ¶ 4, does not exist. The case found at that citation is *Spartans Indus., Inc. v. N.L.R.B.*, 406 F.2d 1002, 1004 (5th Cir. 1969), a case about the obligations of corporations vis-à-vis labor unions.

- *Gordon v. N.Y. Cent. R.R. Co.*, 202 F. Supp. 2d 290, 292 (W.D.N.Y. 2002), *see* ECF No. 19 ¶ 5, does not exist. The case found at that citation is *Fournier v. Erickson*, 202 F. Supp. 2d 290 (S.D.N.Y. 2002), a copyright case.

- *Mitchell v. JCG Industries*, 2010 WL 4975563, at *3 (N.D. Ill. Dec. 1., 2010), *see* ECF No. 19 ¶ 6, does not exist. The case found at that citation is *People v. Castillo*, 2010 WL 4975563 (Cal. Ct. App. Dec. 8, 2010), a California criminal case.

- *Hollander v. Sweeney*, 2005 WL 19904045, at *3 (S.D. Ind. Aug. 17, 2005), *see* ECF No.

---

[3] Notably, Defendant never raised any concern with the Court about the contents of the Reply or the apparently non-existent cases cited therein.

19 ¶ 7, does not exist. That Westlaw citation is a Federal Taxes Weekly Alert page.

- *Davis v. S. Farm Bureau Cas. Inc. Co.*, 2019 WL 3452601, at *2 (W.D. Ark. July 31, 2019), ECF No. 19 ¶ 8, does not exist. That Westlaw citation is a page describing a revision to the Ohio Streamlined Sales and Use Tax Agreement certificate of compliance.

Concerned that the cases cited in the Reply were phony, the undersigned ordered Plaintiff's counsel to show cause. *See* ECF No. 25. In the first instance, the Court provided Plaintiff's counsel with the opportunity to furnish copies of the cases cited in Plaintiff's motion to remand and the Reply, just in case the Court's own legal research was faulty. *Id.* at 4-5. If she could not do so, the Court ordered that Plaintiff's counsel show cause as to why she should not be sanctioned for providing fake cases to the Court.[4] Additionally, the Court held a hearing on the Order to Show Cause on April 16, 2025.

Plaintiff's counsel has submitted various documents in response to the Order to Show Cause. First, she submitted the cases cited in her opening brief in support of the motion to remand. *See* ECF No. 30. The Court's review of these cases confirms that they are real and stand for the propositions for which they are cited. Second, counsel submitted a sworn attorney declaration that confirmed the Court's suspicion that the five cases identified in the Order to Show Cause were fake. ECF No. 31. Specifically, Plaintiff's counsel concedes that these cases do not exist and she instead generated the citations through the use of an AI platform known as ChatOn. *See generally id.*

Claiming that she "had very little time to draft the Reply," Plaintiff's counsel contended in her Response that she "used AI ('ChatOn') to draft the reply but failed to review the Reply before filing it." *Id.* ¶¶ 4-5. As a result, "the Reply did not even mention [Plaintiff's] original

---

[4] The Court also ordered Plaintiff to address the actual, existing case law regarding the motion to remand. In response, Plaintiff candidly withdrew the Motion to Remand with prejudice, and the Court thus denied it with prejudice on February 24, 2025. *See* Electronic Order, dated February 24, 2025.

argument for why the matter should be remanded." *Id.* ¶ 5. Worse yet, "the argument in the Reply supported the defendant's removal of the action to this Court, rather than my motion to remand." *Id.*

At the April 16, 2025 hearing, Plaintiff's counsel presented additional facts regarding how the Reply came to be drafted.[5] First, she asserted that on January 15, 2025, when Judge Choudhury ordered Plaintiff to file the Reply, she had not yet begun drafting (despite being in receipt of the Opposition for nine days). FTR at 10:58:50-10:59:03. Because she was occupied with other tasks (including depositions), Ms. Hovsepyan directed her paralegal to draft the reply. *Id.* at 11:00:19-11:00:32 ("I assigned it to a paralegal cause I had a lot going on that I needed to take care of personally. I had some depositions going on that I needed to prepare for."). Ms. Hovsepyan understood that whatever draft her paralegal produced would require revisions. *Id.* at 11:00:45-11:00:52.

Ms. Hovsepyan did not review the paralegal's work until approximately 7:00 PM on January 17th—just five hours before the Reply was due. *Id.* at 11:00:59-11:01:10. Recognizing that the paralegal's work required substantial revisions, Ms. Hovsepyan turned to ChatOn, which she had previously downloaded on her electronic device but never used before for legal work. *Id.* at 10:51:30-10:52:04. She first asked ChatOn whether it could provide assistance in drafting a legal document. *Id.* at 10:47:37-10:47:44. Ms. Hovsepyan then instructed ChatOn regarding the facts of the case, and ChatOn produced paragraphs containing arguments for remand. *Id.* at 10:47:52-10:48:26. Ms. Hovsepyan then told ChatOn that her argument would need to be supported by case law and instructed the platform to do a re-write with case citations. *Id.* at 10:48:26-10:48:42. In turn, AI obliged and produced the phony case law. *Id.*

---

[5] As no transcript is yet available for the April 16, 2025 hearing, the Court cites timestamps from the For the Record ("FTR") Recording. The parties are invited (but not required) to order a transcript if they wish.

Plaintiff's counsel then took the work produced by ChatOn and pasted it into the sworn affirmation she had created. *Id.* at 10:50:07-10:50:32. Plaintiff's counsel apparently adjusted ChatOn's work product to fit the facts of this case, but not in any substantial manner. *Id.* Plaintiff's counsel told the Court that she conducted "maybe twenty minutes" worth of review of ChatOn's work. *Id.* at 10:53:28-10:53:42. She did not make any effort to read the cases that ChatOn had created or to cite check them. *Id.* at 10:50:45-10:51:04. Plaintiff's counsel then filed the Reply with the fake case law generated by AI at 8:52 PM—approximately three hours before the deadline.

Plaintiff's counsel conceded that she made no effort to request an extension from Judge Choudhury. *Id.* at 10:59:20-10:59:38 ("Q: When you received Judge Choudhury's order, could you have in fact gone back either to defense counsel or the Court itself to ask for more time at that point? A: I could have, yes."). Nor did she seek to meet and confer with Defendant to ascertain whether they would be amenable to an extension of time. *Id.* Plaintiff's counsel asserted at the April 16th hearing that she made no such efforts because she did not think Judge Choudhury would grant any extension at that time. *Id.* at 11:02:57-11:03:03.

Plaintiff's counsel has expressed what the Court views as sincere embarrassment and regret for her actions. *See generally* ECF No. 31. At the outset, Plaintiff's counsel assured the Court that she "had never before used AI for legal research or anything law- or case-related." *Id.* ¶ 4. Next, she noted that she has already undertaken corrective action by enrolling in CLE courses on the use of AI in the legal profession. *Id.* ¶ 8.

To that end, upon receipt of counsel's Response, the Court ordered Plaintiff's counsel to identify "(1) the two CLE classes that she already took and whether they were free or whether Plaintiff's counsel was required to pay for them; and (2) the prospective CLE classes that she

intends to take regarding AI issues and federal court practice." Electronic Order, dated February 28, 2025. In response, Plaintiff's counsel stated that she took a CLE course called "Legal Use Cases for Generative AI & Their Ethical Implications," for which she paid $59. ECF No. 32 ¶ 3. She also took a CLE course titled "Artificial Intelligence & Its Impact on the Practice of Law," which she attended for free as a result of her membership in the New York State Bar Association. *Id.* ¶ 4. Finally, she enrolled in two CLE courses on federal court practice and has registered for additional courses. *Id.* ¶¶ 5-6.

Despite these remedial measures, however, it is clear that the Court still must exercise its discretion to impose sanctions. The Court notes that the purpose of sanctions is "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The sanctions are thus tailored to the facts of this case with those goals in mind.

## II.　LEGAL STANDARD

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "Rule 11 imposes a duty on attorneys to certify that they have conducted a *reasonable inquiry* and have determined that any papers filed with the court are well grounded in fact, [and] legally tenable." *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024) (citation omitted) (emphasis added). Accordingly, Rule 11 prohibits attorneys from "making frivolous legal arguments." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 459 (S.D.N.Y. 2023) (citation omitted). "At the very least, the duties imposed by Rule 11 require that attorneys

9

read, *and thereby confirm the existence and validity of*, the legal authorities on which they rely." *Park*, 91 F.4th at 615 (emphasis added).

"When, as here, a court considers whether to impose sanctions *sua sponte*, it 'is akin to the court's inherent power of contempt,' and, 'like contempt, *sua sponte* sanctions in those circumstances should issue only upon a finding of subjective bad faith.'" *Mata*, 678 F. Supp. 3d at 462 (quoting *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)). "[C]ourts in this Circuit have found subjective bad faith in a variety of cases, 'ranging from those involving overtly dishonest or contemptuous behavior, down to those where the court simply regarded an argument as frivolous.'" *Cardona v. Mohabir*, No. 14-CV-1596, 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014) (citation omitted). As one court in this District defined it, the standard is essentially "frivolous-plus:" conduct that falls between the mere frivolous and the "lie about a historical fact." *In re Gushlak*, No. 11-MC-218, 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012) (Garaufis, J.). "A false statement of knowledge can constitute subjective bad faith where the speaker 'knew that he had no such knowledge.'" *Mata*, 678 F. Supp. 3d at 463 (citation omitted). In imposing sanctions, courts may consider "either direct or circumstantial evidence that counsel knew" the action taken was meritless. *Gushlak*, 2012 WL 2564523, at *2.

Across the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases. In nearly all cases, courts have imposed monetary sanctions ranging from $1,500 to $15,000. *See, e.g.*, *Wadsworth v. Walmart Inc.*, No. 23-CV-118, 2025 WL 608073, at *8 (D. Wyo. Feb. 24, 2025) ($3,000 fine for the drafter of the brief with fake cases and $1,000 for other attorneys who signed, but did not draft brief); *United States v. Hayes*, No. 24-CR-0280, 2025 WL 235531, at *15 (E.D. Cal. Jan. 17, 2025) ($1,500 fine); *Gauthier v. Goodyear Tire & Rubber Co.*, No. 23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) ($2,000 fine);

*Mid Central Operating Engineers Health & Welfare Fund v. Hoosiervac LLC*, No. 24-CV-00326, 2025 WL 574234, at *2-3 (S.D. Ind. Feb. 21, 2025) (recommending $15,000 fine); *Mata*, 678 F. Supp. 3d at 449 ($5,000 fine for citing fake cases and then submitting AI-generated fake excerpts from the fake cases).

In some cases, courts have referred attorneys to the appropriate disciplinary body for disciplinary proceedings. *See, e.g.*, *Park*, 91 F.4th at 615-16 (referring attorney to Second Circuit's Grievance Panel); *Hayes*, 2025 WL 235531, at *15 (directing Clerk of Court to serve copy of sanctions order on bar). In addition to monetary sanctions (which are imposed in the vast majority of cases) and referrals, courts have imposed more targeted sanctions given the circumstances by, for example, revoking the *pro hac vice* admission of an attorney, *Wadsworth*, 2025 WL 608073, at *6, or requiring the attorney attend CLE trainings regarding the use of AI, *Gauthier*, 2024 WL 4882651, at *3.

In determining the appropriate sanction, courts focus not on compensation for the aggrieved party, but on "the deterrence of baseless filings and the curbing of abuses." *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21-CV-11096, 2023 WL 112552, at *3 (S.D.N.Y. Jan. 4, 2023) (citation omitted). For that reason, "a court should impose the least severe sanctions necessary to achieve the goal." *Id.* at *4 (citing *Schottenstein v. Schottenstein*, No. 04-CV-5851, 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005)).

### III. DISCUSSION

Plaintiff's counsel's conduct hardly breaks new ground. Thus, the undersigned need not write on a blank slate and will instead follow the well-trodden path set by courts across the nation who have dealt with similar unfortunate circumstances over the past few years.

### A. Plaintiff's Counsel Cited Cases She Knew She Had Not Read

As Plaintiff's counsel readily admitted after the Court issued the Order to Show Cause, she "failed to make sure the cases cited in the Reply existed and were accurate and [she] failed to make sure that the arguments advanced in the Reply made sense." ECF No. 31 ¶ 6. She further concedes that, although she apparently "skimmed" the Reply, she "clearly did not read it." *Id.* ¶ 5. As the Second Circuit has held, Rule 11 imposes an obligation on attorneys to, at a minimum, read the cases they cite to the Court. *Park*, 91 F.4th at 615. Had Plaintiff's counsel undertaken the routine task of cite checking her brief, she would have discovered that the cases generated by ChatOn at her instruction were fictitious. It thus appears that not only did Plaintiff's counsel fail to make the "reasonable inquiry" required by Rule 11, but she *made no inquiry at all* into the validity of the arguments she was making to the Court. *Mid Central*, 2025 WL 574234, at *2-3 ("Confirming a case is good law is a basic, routine matter and something to be expected from a practicing attorney."). What is worse, as Plaintiff's counsel again concedes, at least some arguments in the Reply *undermined* any basis for remanding this case to state court, which (again) would have been obvious to an attorney even glancing at the Reply.

The Court notes this conduct comes at a cost to Plaintiff Guerline Benjamin—a fact that was notably absent from Ms. Hovsepyan's own presentation at the April 16th hearing.[6] Clients hire attorneys to perform legal research, investigate the merit of their claims, and provide the best argument in support of their case to the Court. The Court cannot permit attorneys to delegate these fundamental tenants of the attorney-client relationship to an AI platform and submit the product to the Court without review. Lawyers in the State of New York are tasked with "provid[ing] competent representation to a client." N.Y. Rules of Professional Conduct

---

[6] Indeed, although Ms. Hovsepyan's attorney discussed the prejudice this self-induced fiasco has had on Plaintiff Benjamin, Ms. Hovsepyan did not.

Rule 1.1(a). "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Id.* Thus, in turning to AI to perform a task she should have undertaken on her own, Plaintiff's counsel did not fully live up to that duty.

Next, this entire matter has been a waste of the Court's resources. The Court undertook a review of the Reply with the intention of resolving a routine matter of civil procedure. Instead, the Court has been left with no choice but to survey the case law regarding attorney misconduct relating to the use of AI. The collateral damage does not end there. Indeed, "[t]here is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct." *Mata*, 678 F. Supp. 3d at 448.

A few more points bear mention. Plaintiff's counsel laments that she felt compelled to use AI because she "had very little time to draft the Reply." ECF No. 31 ¶ 5. The Court is unimpressed by this explanation. First, Plaintiff received Defendant's late opposition on January 6, 2025, and Plaintiff ultimately was not ordered by Judge Choudhury to file the Reply until January 17, 2025—eleven days later. Under the original briefing schedule set by Judge Choudhury, Plaintiff would have had only seven days to serve a reply. Thus, Defendant's inadvertent error in fact provided counsel *more* time to draft a reply than originally anticipated. Second, this excuse rings especially hollow in light of Plaintiff's own conduct regarding Defendant's untimely opposition to the motion to remand. *See* ECF No. 16 (letter from Plaintiff to Judge Choudhury requesting "that the Court disregard Defendants' untimely opposition and proceed as if no opposition has been filed and hereby grant Plaintiff's Motion to Remand"). Rather than begin drafting a reply, Plaintiff's counsel instead focused her energy on pursuing overzealous litigation tactics in the form of a needless letter-writing campaign regarding

Defendant's late submission.  Perhaps Ms. Hovsepyan's reluctance to accommodate Defendant's extension request gave her pause before requesting her own extension.  Nonetheless, as Plaintiff's counsel acknowledges, a short deadline is no excuse to fail to perform accurate legal research that is presented to the Court.

What is more, the arguments in the Reply make little sense in context and do not address most of the points raised in the opening brief.  Even the shortest of deadlines is no excuse to abandon an attorney's obligation to make sensible and complete arguments to the Court.  Indeed, it was the incoherence of the Reply that quickly alerted the Court that something had gone badly wrong.

### B. Plaintiff's Counsel Acted in Subjective Bad Faith

All of this is to say that the conduct here was undoubtedly grossly negligent.  However, in this Circuit, when a court *sua sponte* imposes sanctions, it must find that the attorney acted in bad faith.  *See United States v. Cohen*, 724 F. Supp. 3d 251, 258 (S.D.N.Y. 2024) (noting that "*sua sponte* sanctions . . . should only issue upon a finding of subjective bad faith") (citation omitted).  In urging the Court to refrain from imposing sanctions, Plaintiff's counsel expresses what the Court views as sincere regret and embarrassment for her conduct.  The Court appreciates that Plaintiff's counsel immediately owned up to her conduct, rather than obfuscating or attempting to skirt responsibility.  Additionally, she asserts that she has undertaken several CLE courses to inform herself of the potential dangers of utilizing AI for legal work.  These developments are assuring, as they demonstrate that Plaintiff's counsel understands the seriously troubling nature of her conduct.  But regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority.  *See Dehghani*, 2025 WL 988009, at *5 ("While the Court acknowledges that [counsel] was sincerely apologetic for his failure to ensure cases cited in his brief existed and for the extra work this has caused the

Court, he has nonetheless failed to adhere to his obligations under Rule 11."). For the following reasons, the Court concludes that Plaintiff's counsel acted in subjective bad faith and therefore imposes sanctions.

In *Mata*, a court in the Southern District of New York found that an attorney acted in subjective bad faith by "not reading a single case cited in [his affirmation] and taking no other steps on his own to check whether any aspect of the assertions of law were warranted by existing law." *Mata*, 678 F. Supp 3d at 464. By "signing and filing that affirmation after making no "inquiry," the attorney acted in "subjective bad faith." *Id.* Notably, although the court in *Mata* found other egregious examples of bad faith, it also found that signing the affirmation constituted bad faith on its own. *Id.*

In the Reply, Plaintiff's counsel "affirm[ed] the truth of the following [content] under penalty of perjury." ECF No. 19 at 1. The Court finds, however, that Plaintiff's counsel could not seriously make such an assertion. That is because she *did not* know that the contents of the Reply were "true" when she submitted it, as she had done nothing to ensure herself they were. Yet, she proceeded to submit the arguments supported by case law she had never read. Following the reasoning in *Mata*, the Court concludes that, in this context, the submission "under penalty of perjury" of statements Plaintiff's counsel did not know to be true constitutes bad faith for purposes of Rule 11. *Mata*, 678 F. Supp. 3d at 462-63 ("A false statement of knowledge can constitute subjective bad faith where the speaker 'knew that he had no such knowledge.'") (citation omitted); *see also Zhang v. Tong*, No. 17-CV-840, 2025 WL 992359, at *5 (S.D.N.Y. Apr. 1, 2025) ("[B]ad faith may be inferred when 'a party undertakes frivolous actions that are completely without merit.'") (quoting *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018)). The facts here thus suggest much more than mere carelessness. Rather,

Plaintiff's counsel was under what she viewed as a tight timeline. After unsuccessfully outsourcing the work on the first draft to her paralegal, she turned to AI to produce work she could not (or would not) do on her own. She then attempted to pass that work off as her own by affixing her name to a sworn statement affirming the truth of the contents. And she did this knowing that she had no personal knowledge of the accuracy of the statements within the affirmation. The Court is compelled to conclude this conduct rises to the level of subjective bad faith.[7]

### C. Sanctions Are Warranted

Finally, the Court turns to determining the appropriate sanctions. As detailed above, courts have imposed financial sanctions on similarly situated attorneys ranging from approximately $1,500 to $5,000. The Court finds that a monetary sanction of $1,000 is appropriate in this case. The Court's sanction is lower than in many other similar cases in part because of Ms. Hovsepyan's candor and sincere regret. By contrast, in other cases, attorneys have double-downed on their misconduct in responding to orders to show cause by directing the AI platform to produce copies of the fake cases and then filing them with the court. *See, e.g.*, *Mata*, 678 F. Supp. 3d at 453.

The facts here are considerably different, as Ms. Hovsepyan again and again has expressed remorse to the Court. Further, it appears that this is the only time she has used an AI

---

[7] By contrast, one court declined to impose sanctions against an attorney who cited fake cases because the attorney merely reviewed a draft written in part by his client (who was a lawyer) and that had already been reviewed by another attorney. *Cohen*, 724 F. Supp. 3d at 258-59. The court found that the attorney "had confidence in the accuracy of the cases given [his colleague's] reputation and that he never contemplated that the cases were non-existent." *Id.* at 258. The Court finds *Cohen* inapposite to the facts here. First, Plaintiff's does not (and cannot) make any assertion that she relied on the work of other lawyers. Second, the facts here more closely mirror the Second Circuit's decision in *Park* imposing sanctions because the attorney's "brief presents a false statement of law to this Court, and it appears that [the attorney] made no inquiry, much less the reasonable inquiry required by Rule 11 and long-standing precedent, into the validity of the arguments she presented." *Park*, 91 F.4th at 615-16. The undersigned has followed the precise course of action as the Second Circuit by ordering Plaintiff's counsel to produce the suspicious cases or, in the alternative, to explain her conduct, and then imposing sanctions (after a hearing) when it became clear the cases were fake.

platform to replace her own legal judgment.  Finally, the Court has considered that Ms. Hovsepyan has (on her own initiative) participated in CLE courses relating to this topic and has put forth money towards participating in those courses.  While the one-off nature of this incident and Ms. Hovsepyan's remorse do not absolve her of responsibility, they are mitigating factors that lead the Court to conclude that a fine of $1,000 is sufficient.

Such payment shall be made to the Clerk of Court within fourteen days of this Order as specified below.  Additionally, Plaintiff's counsel shall provide a copy of this Order to her client and file proof of service on ECF.  The Court declines to refer Plaintiff's counsel to any disciplinary body or to revoke her *pro hac vice* status, as the Court is confident that such punitive sanctions are unnecessary under the circumstances.

### IV. CONCLUSION

For the foregoing reasons, the Court imposes the following sanctions pursuant to Rule 11:

1. A penalty of $1,000 is imposed on Ms. Hovsepyan.  The payment shall be made within fourteen days of this order by check or money order to the Clerk of Court, EDNY.  Payment may be mailed to the Clerk's Office, 100 Federal Plaza, Central Islip, New York 11722.  To be clear, such payment shall not be attributable to Plaintiff Benjamin.
2. Within fourteen days of this Order, Ms. Hovsepyan shall serve a copy of this Order on Plaintiff Benjamin and file proof of service on ECF.

**SO ORDERED**:

Dated: Central Islip, New York
       April 24, 2025

      s/ Lee G. Dunst   
**LEE G. DUNST**
United States Magistrate Judge